## CIRCUIT COURT OF THE CITY OF SALEM

Ann Marie Smith

v.

Edward David Smith

December 28, 1998

Case No. CH98-88, 89, 107

BY JUDGE ROBERT P. DOHERTY, JR.

In this appealed child custody case, the father deserted his wife and children and, within approximately one week, moved in with his girlfriend and her seven-year-old daughter. The desertion occurred in late September or early October 1997. In June 1998, the Juvenile and Domestic Relations District Court granted custody of the parties' five-year-old son and one-and-one-half-year-old daughter to the father. This custody placement was based in part on the findings in the custody report prepared by the Department of Social Services and the evaluation of a psychologist and of two psychiatrists, each of whom used the report and conclusions of the social worker to assist them in reaching their opinion.

The Court finds as a matter of fact that many of the conclusions of the social worker are not accurate. The mother was a full-time housewife during the marriage and was the primary caretaker for the children. The mother does not entertain overnight guests of the opposite sex while the children are present. On the contrary, she objected to this type of behavior around the children and objects to the children's father living out of wedlock with his girlfriend while the children are there. The rumors concerning the mother's social life are completely unsubstantiated and contrary to the evidence. The conclusion that the mother is unstable and volatile is not borne out by the testimony. Her outbursts when confronted with her children, her husband, and the husband's girlfriend at a shopping mall, and again when the children were

moved to a different child care center without consulting her, while regrettable, are not unexpected or contrary to human experience. When looked at from the mother's point of view that the husband's girlfriend is an interloper who broke up her marriage, the mother's reaction at finding that her name had not been listed as the children's mother, but instead the girlfriend was listed as the emergency contact person by the day care center, was foreseeable. The conclusion that the father's housing is more stable because he is in a long-term relationship with his girlfriend was reached because it was felt that the mother would not be able to purchase her husband's interest in their home of five years, when a divorce becomes final. The conclusion that the father is the more stable of the two because of his long-term relationship with his girlfriend seems to have overlooked the fact that within the past year, he abruptly left his wife of five years and their children. Convincing evidence was not presented that the father was more responsible in caring for the children than was the mother. The father does have a more stable job than the mother.

The Court further finds that the father does not cooperate with the mother in matters affecting the children and that he does not try to preserve and support the contact between the children and their mother. He excluded the mother from visiting with the children when on vacation at the beach, despite the fact that the mother was also vacationing there and requested visitation. He instructed his girlfriend not to list the mother as a person to be contacted in case of an emergency at the day care center. The father continues to send the five-year-old to karate or kick boxing classes, notwithstanding the mother's objection or the apparent aggression it has brought out in the child. The father has not shared school information with the mother about their son, and he has not been willing to bend when necessary on visitation times, as has the mother. His constant telephone contact with the children when they are with their mother detracts from their visits and tends to encourage them to lessen their reliance on her as a parent. The father's apparent desire or willingness to let his girlfriend take over many of the parenting chores to the exclusion of the children's mother is counterproductive to the emotional welfare of the children. It is, however, encouraging that both the father and his girlfriend have completed a parenting class as recommended by the social worker.

"A trial court is not required to accept the opinion of an expert." *Piatt v. Piatt,* 27 Va. App. 427 (1998). The opinions of the psychologist and of the psychiatrists are based in part on the erroneous conclusions reached in the home study conducted by the Department of Social Services and, as such, are of limited value in their final analysis. It is noted, however, that none of these professionals concluded that either parent was unfit. In fact, they were trying

to determine which of two fit parents should be recommended as the children's primary custodian.

"In all child custody cases, ... the best interests of the child[ren] are paramount and form the lodestar for the guidance of the court in determining the dispute." *Bottoms v. Bottoms*, 249 Va. 413 (1995). As this matter was heard as a *de novo* appeal from an initial custody determination, no presumption as to custody exists in favor of either parent. Applying a clear and convincing evidentiary standard, having observed the witnesses and their demeanor, and having considered each and every one of the factors contained in § 20-124.3, Code of Virginia (1950), as amended, including the moral climate in which the children are currently being raised, as well as the father's choice to abandon his wife and children at his initial departure, the Court finds that the best interests of the children will be served by placing their joint legal custody with both father and mother and by placing their physical custody with their mother.

If the parties are unable to reach an agreement as to appropriate visitation times, the Court will set them. The parties are encouraged to try to resolve the visitation issue, as the court would, and to include alternate weekends and holidays, summer visitation, and a limit on telephone calls from the parent who is not then caring for the children. They are further encouraged to work together in setting these times and to adjust them from time to time as circumstances necessitate. Because of the holidays, the physical change of custody will occur on January 1, 1999.